## MICHAEL F. BROWN *v.* K.N.D. CORPORATION ET AL. (12987)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and F. HENNESSY, Js.

Argued May 7—decision released August 18, 1987

*Sydney T. Schulman,* with whom, on the brief, was *Otto Witt,* for the appellant (defendant Wilber Smith).

*John F. McKenna,* for the appellee (plaintiff).

CALLAHAN, J. The defendant Wilber Smith has appealed from the decision of the Appellate Court in *Brown* v. *K.N.D. Corporation,* 7 Conn. App. 418, 509 A.2d 533 (1986), which reversed a trial court judgment in his favor. This case was initiated when Michael F. Brown, the plaintiff, an assistant city manager employed by the city of Hartford, commenced an action for an allegedly defamatory remark made by the defendant Smith on December 16, 1979, during a radio broadcast over the facilities of the defendant radio station WKND.[1] Smith, the host of a public affairs talk show called "What's On Your Mind," made the following comment while on the air during the course of the program: "The [Ku Klux] Klan has not only sympathizers who are willing to march with them but they also have sympathizers in the Chamber of Commerce, they have them in these banks and insurance companies and they are sympathizers. They are in state government, they are in City Hall right now, ah, if Mr. . . . isn't one of them Mike Brown is a sympathizer of the Klan if he is not a member. Now if he wants to sue me about it then we go into his record and racist activity that he has been putting out in this city."

The trial court found that the comment was false and defamatory. It also found, however, that Brown was a public official and that he had failed to prove by clear and convincing evidence that Smith's remark had been made with actual malice. The trial court, therefore, rendered judgment for the defendant. On appeal, the Appellate Court conducted an independent review of the trial court record and concluded, contrary to the trial court, that Smith's remark had indeed been made with actual malice. The Appellate Court therefore set

---

[1] The trial court rendered a default judgment against the defendant K.N.D. Corporation for failure to appear at trial. K.N.D. Corporation is not involved in this appeal. As used in this opinion, the defendant refers to Wilber Smith.

aside the judgment of the trial court and remanded the case with direction to render judgment for Brown on the issue of liability and to conduct a hearing in damages. We reverse.

The dispositive issue in this appeal is whether the Appellate Court was correct in conducting an independent examination of the trial court record to make its own determination of actual malice or whether its review should have been limited to the clearly erroneous standard of Practice Book § 4061.

The constitutional guarantees of the first amendment have fostered a federal rule of constitutional law "that prohibits a public official[2] from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co.* v. *Sullivan,* 376 U.S. 254, 279–80, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964); see also *Philadelphia Newspapers, Inc.* v. *Hepps,* 475 U.S. 767, 773, 106 S. Ct. 1558, 89 L. Ed. 2d 783 (1986); *Dun & Bradstreet, Inc.* v. *Greenmoss Builders, Inc.,* 472 U.S. 749, 755, 105 S. Ct. 2939, 86 L. Ed. 2d 593 (1985); *Bose Corporation* v. *Consumers Union of United States, Inc.,* 466 U.S. 485, 502, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984); *Hardin* v. *Santa Fe Reporter, Inc.,* 745 F.2d 1323, 1325 (10th Cir. 1984); *Holbrook* v. *Casazza,* 204 Conn. 336, 342, 528 A.2d 774 (1987). In order to prevail in a defamation action the public official must prove actual malice by the elevated standard of clear and convincing evidence. *Philadel-*

---

[2] There is no doubt that Brown, an assistant city manager for the city of Hartford at the time of the broadcast, was a public official as contemplated by *New York Times Co.* v. *Sullivan,* 376 U.S. 254, 84 S. Ct. 728, 11 L. Ed. 2d 686 (1964), *Rosenblatt* v. *Baer,* 383 U.S. 75, 86 S. Ct. 609, 15 L. Ed 2d 597 (1966), and *Moriarty* v. *Lippe,* 162 Conn. 371, 294 A.2d 326 (1972).

*phia Newspapers, Inc.* v. *Hepps,* supra; *Gertz* v. *Robert Welch, Inc.,* 418 U.S. 323, 342, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974); *Tavoulareas* v. *Piro,* 817 F.2d 762, 776 (D.C. Cir. 1987); *Long* v. *Arcell,* 618 F.2d 1145, 1148 (5th Cir. 1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 869, 66 L. Ed. 2d 808 (1981). Furthermore, in cases raising first amendment issues, the United States Supreme Court has "repeatedly held that an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not *constitute a forbidden intrusion on the field of free expression.'* *New York Times Co.* v. *Sullivan,* [supra, 284–86]." (Emphasis added.) *Bose Corporation* v. *Consumers Union of United States, Inc.,* supra, 499; *Tavoulareas* v. *Piro,* supra; *Holbrook* v. *Casazza,* supra, 343.

The rule of independent review assigns to appellate courts in first amendment freedom of expression cases, "a constitutional responsibility that cannot be delegated to the trier of fact, whether the factfinding function be performed in the particular case by a jury or by a trial judge." *Bose Corporation* v. *Consumers Union of United States, Inc.,* supra, 501. This rule has been adopted because freedom of expression occupies the " ' "highest rung of the hierarchy of First Amendment values," ' and is entitled to special protection. *NAACP* v. *Clairborne Hardware Co.,* 458 U.S. 886, 913, 102 S. Ct. 3409, 73 L. Ed. 2d 1215 (1982)." *Connick* v. *Myers,* 461 U.S. 138, 145, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1982). Moreover, the United States Supreme Court has recognized that traditional actions for defamation may interfere with the first amendment right of expression. *Greenbelt Cooperative Publishing Assn.* v. *Bresler,* 398 U.S. 6, 14, 90 S. Ct. 1537, 26 L. Ed. 2d 6 (1970); *Tavoulareas* v. *Piro,* supra, 771.

"The question whether the evidence in the record in a defamation case is of the convincing clarity required

to strip the utterance of First Amendment protection is not merely a question for the trier of fact. Judges as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of 'actual malice.' " *Bose Corporation* v. *Consumers Union of United States, Inc.,* supra, 511. There is no doubt, therefore, that a trial court finding of actual malice in a defamation case requires an appellate court to conduct an independent review of the record and to draw its own conclusion as to whether actual malice has been proven by clear and convincing evidence. As the *Bose Corporation* court said, "the clearly erroneous standard of Rule 52 (a) of the Federal Rules of Civil Procedure does not prescribe the standard of review to be applied in *reviewing a determination of actual malice* in a case governed by *New York Times Co.* v. *Sullivan.* Appellate judges in such a case must exercise independent judgment and determine whether the *record establishes actual malice* with convincing clarity." (Emphasis added.) Id., 514.

The defendant, however, contends that since the trial court, in this case, made a finding that there was no actual malice, and hence no liability, the Appellate Court erred when it conducted an independent review of the record and came to a contrary conclusion. He maintains that absent a finding of actual malice there is no threat to, or encroachment upon first amendment rights or values that requires independent appellate review. He argues, therefore, that the Appellate Court should have applied the less stringent "clearly erroneous" test of Practice Book § 4061 to the trial court judgment. Under that standard, he contends, the judgment of the trial court should be affirmed because "there was sufficient evidence to support the findings of the trial court and the findings were not, as a matter of law clearly erroneous." We agree.

The purpose of independent review is to safeguard the right of free expression. *Bose Corporation* v. *Consumers Union of United States, Inc.,* supra, 508; *New York Times Co.* v. *Sullivan,* supra, 285. Absent a finding of actual malice there is no liability imposed on a defendant for his exercise of that right and hence no incursion on the first amendment. When, therefore, after a full trial on the merits, there is a finding of no actual malice, we think the better reasoning dictates that appellate review of the trial court judgment should be limited to the clearly erroneous standard of Practice Book § 4061. There is a paucity of case law on this specific point.[3] In our view, however, the obligation of an appellate court to conduct an independent review of the trial court record and to make its own determination of actual malice, arises only when expression would be punished and hence inhibited by the imposition of court awarded damages. See L. Levine, "Judge and Jury in the Law of Defamation: Putting the Horse Behind the Cart," 35 Am. U. L. Rev. 3, 76 (1985).

The function of the procedural scheme created by *New York Times Co.* v. *Sullivan,* supra, and *Bose Corporation* v. *Consumers Union of United States, Inc.,*

---

[3] The Appellate Court relied principally on the case of *Bartimo* v. *Horseman's Benevolent and Protective Assn.,* 771 F.2d 894 (5th Cir. 1985), cert. denied, 475 U.S. 1119, 106 S. Ct. 1635, 90 L. Ed. 2d 181 (1986), for the proposition that there should be an independent review of the record even though the trial court had found no actual malice. *Bartimo* was decided on the defendant's motion to dismiss at the close of the plaintiff's case, not after a full trial as in this instance. We do not find convincing the cases cited by the *Bartimo* court in support of its position. We also do not find its reasoning compelling, i.e., that "we cannot see the sense of applying 'a rule of Federal constitutional law' . . . only if the plaintiff prevails at trial," and the application of the clearly erroneous rule to a decision of the trial court in favor of the defendant might possibly require "two different standards" of review for the same record. Id., 897, 898 n.3. The *Bartimo* reasoning, coupled with that of *New York Times Co.* v. *Sullivan,* 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964), would reduce the trial court to a mere conduit for information to an appellate court for its decision.

supra, is obviously to require an independent second opinion when free speech is curtailed. These cases place the ultimate constitutional responsibility on appellate courts to render that second opinion in order to safeguard free expression. They give no indication, however, that the United States Supreme Court intended thereby to reject completely the role of juries and trial judges in the protection of first amendment freedoms. If, therefore, the trial judge or jury finds that actual malice has not been proven with convincing clarity and, hence, no penalty is imposed for the exercise of first amendment rights, an appellate court should have no authority under the guise of independent review to upset that determination. We fail to see how allowing an appellate court to conduct an independent review and to draw its own inferences from the facts and to find liability, where the trial court has found that none exists, advances the cause of freedom of expression. See *McCoy* v. *Hearst Corporation,* 42 Cal. 3d 835, 727 P.2d 711, 718, 231 Cal. Rptr. 518 (1986) (appellate court may substitute its own inferences on the issue of actual malice for those drawn by the trier of fact). When first amendment rights have already been vindicated in the trial court, they require no special protective standard of review in the appellate courts and the usual standard for review of trial court error should apply. It is only when a defamation action "has *successfully* been brought by a public official" that we deem independent review to be constitutionally mandated. (Emphasis added.) *Holbrook* v. *Casazza,* supra, 343.

This reasoning would ensure that the trier of fact, be it judge or jury, would not be able to stifle free expression and thereafter be subject to review only under the clearly erroneous standard. It would also guarantee that if the trial court imposes liability for defamation and, after an independent review, an appellate court agrees that the defendant published with

actual malice, the system has arrived at a result that reasonably assures that the expression at issue is not entitled to constitutional protection. This reasoning would not, however, impose a layer of enhanced appellate scrutiny of the trial court record where none is desired by the proponent of free expression or required to protect first amendment freedoms and values. See L. Levine, supra.

Viewing the record from the "clearly erroneous" perspective, we cannot say that the trial court erred when it determined that the plaintiff had failed to prove actual malice by clear and convincing evidence. "The crucial focus of actual malice under *New York Times* [*Co.*] is the defendant's attitude, or state of mind, toward the allegedly libelous material published." *McCoy* v. *Hearst Corporation,* supra, 719; *Zerangue* v. *TSP Newspapers, Inc.,* 814 F.2d 1066, 1070 (5th Cir. 1987). Here, the defendant's statement could reasonably have been interpreted by the trial court, not as accusing the plaintiff of being an actual member of the Ku Klux Klan, but as asserting that his actions indicated that he sympathized with its objectives. Taken in the context in which it was said, and would be understood by the average listener,[4] the trial court could reasonably have concluded that Smith was criticizing the plaintiff and what Smith perceived to be the power structure in Hartford for failing to effect changes in racial relations and racial policy. See *Greenbelt Cooperative Publishing Assn.* v. *Bresler,* supra, 14. Looking

---

[4] To determine the meaning of an allegedly defamatory communication, the " 'publication must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it.' " *Washington Post Co.* v. *Chaloner,* 250 U.S. 290, 293, 39 S. Ct. 448, 63 L. Ed. 987 (1919); *Keller* v. *Miami Herald Publishing Co.,* 778 F.2d 711, 715 (1985), reh. denied, 783 F.2d 205 (11th Cir. 1986); *Ollman* v. *Evans,* 750 F.2d 970, 1012 (D.C. Cir. 1984), cert. denied, 471 U.S. 1127, 105 S. Ct. 2662, 86 L. Ed. 2d 278 (1985); *Baker* v. *Los Angeles Herald Examiner,* 42 Cal. 3d 254, 260, 721 P.2d 87, 228 Cal. Rptr. 206 (1986).

at the statement in that light, we cannot say the trial court reached a clearly erroneous conclusion[5] when it held that although the defendant's remark had been "made negligently" there was no evidence from which it could conclude "that the defendant knew his statement was untrue."[6] A negligent misstatement concerning a public official retains first amendment protection. *Holbrook* v. *Casazza,* supra, 346.

It is unfortunate that Smith resorted to such hyperbolic rhetoric in voicing his criticism. His lack of discretion apparently placed a completely undeserved blot on the plaintiff's escutcheon. Nevertheless, "debate on public issues should be uninhibited, robust and wide open, and that [debate] may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co.* v. *Sullivan,* supra, 270. It must be kept in mind that "[c]riticism of those responsible for government operations must be free, lest criticism of government itself be penalized." *Rosenblatt* v. *Baer,* 383 U.S. 75, 85, 86 S. Ct. 669, 15 L. Ed. 2d 597 (1966).

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court to render judgment for the defendant.

In this opinion the other justices concurred.

---

[5] "The evidence is given the most favorable construction to which it is reasonably entitled in support of the verdict. *Wochek* v. *Foley,* 193 Conn. 582, 587, 477 A.2d 1015 (1984); *Petrillo* v. *Bess,* 149 Conn. 166, 167, 179 A.2d 600 (1961); *Kerrigan* v. *Detroit Steel Corporation,* 146 Conn. 658, 660, 154 A.2d 517 (1959)." *Holbrook* v. *Casazza,* 204 Conn. 336, 343, 528 A.2d 774 (1987).

[6] The trial court found that Smith testified "that he did not mean that Brown 'consciously' sympathized with the [Ku Klux] Klan. Rather that those who had the power to end rampant racial discrimination and failed to do so were 'unconscious' sympathizers in that they further the goals of the Klan." Later, the trial court found that "[g]iven that the statement said more than the speaker intended, that it was uttered extemporaneously, the court cannot find that the plaintiff has sustained his burden of proving 'actual malice' by clear and convincing evidence."